IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PATSY SAWYER BROWN, | ) | |
| PLAINTIFF, | ) | |
| VS. | ) | CV89-H-1430-S |
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY, | ) | |
| DEFENDANT. | ) | |
| KATHARINE MARY ANN BROWN, | ) | |
| PLAINTIFF, | ) | |
| VS. | ) | CV89-H-2063-S |
| PATSY SAWYER BROWN, CONNECTICUT GENERAL LIFE INSURANCE COMPANY, | ) | |
| DEFENDANT. | ) | |

**ENTERED**

**MAY 17 1990**

## MEMORANDUM OF DECISION

The above styled case is before the court on cross motions for summary judgment filed by Patsy Sawyer Brown and Katharine Mary Ann Brown. The issues are well defined in the pleadings and the briefs and related documents submitted in support of and in opposition to the motions.

The following relevant facts are not disputed: 1) At the time of his death on April 30, 1989, Stirling Robert Brown was a participant in a group life insurance plan established and maintained by his employer RUST International Corporation; 2) RUST International Corporation purchased a group life insurance policy from Connecticut General Life Insurance Company which

insured Stirling Robert Brown's life in the amount of $134,000; 3) The named beneficiary of the life insurance proceeds under the policy is Patsy Sawyer Brown, the widow of Stirling Robert Brown; 4) Prior to his marriage to Patsy Sawyer Brown, Stirling Robert Brown was married to Katharine Mary Ann Brown, that marriage having terminated by a decree of divorce dated March 1, 1982; 5) According to an agreement reached by Katharine Mary Ann Brown and Stirling Robert Brown at the time of their divorce, the Judgment of Divorce provided, in part, "That the Defendant [Stirling Robert Brown] shall keep the Plaintiff [Katharine Mary Ann Brown] as beneficiary on the life insurance now in effect on his life for as long as she remains unmarried;" 6) At the time of the divorce, Stirling Robert Brown had three separate life insurance policies -- one of which was maintained through International Paper Company, his employer at the time, in the amount of $94,000.

In an order dated April 17, 1990, this court permitted Connecticut General Life Insurance Company to interplead the value of the insurance policy it maintained on the life of Stirling Robert Brown, releasing and discharging Connecticut General Life Insurance Company from any and all liability arising under the policy to either Patsy Sawyer Brown or Katharine Mary Ann Brown. The issue to be resolved by the cross motions for summary judgment, therefore, is whether Patsy Sawyer Brown, as the named beneficiary of the life insurance policy, is entitled to the proceeds of that policy, or whether Katharine Mary Ann Brown, as per the agreement incorporated in the divorce decree,

2

is entitled to those proceeds to the extent of the value of Stirling Robert Brown's life insurance policy at the time of their divorce. There are no facts in dispute which prevent the court from making this determination as a matter of law.

Movant Katharine Mary Ann Brown contends that she has an equitable interest in the proceeds of the life insurance policy and that a constructive trust should be established in her favor. Under Alabama law constructive trusts are used to prevent unjust enrichment and are only imposed when a property interest was acquired by fraud or when it would be inequitable to allow the property interest to be retained by the person who holds it. *Coupounas v. Morad*, 380 So.2d 800, 803 (Ala. 1980). There is no evidence that the life insurance policy with Connecticut General Life Insurance Company was attained by Stirling Robert Brown in an attempt to fraudulently deprive his former wife, Katharine Mary Ann Brown, of benefits she was entitled to by way of the divorce decree. Rather, Stirling Robert Brown left his employment with International Paper Company in Mobile, Alabama, thereby terminating his right to maintain a life insurance policy with that company.[1] Stirling Robert Brown subsequently took a

---

[1] Stirling Robert Brown was employed by International Paper Company in Mobile, Alabama until some time in May, 1983. He did not take a position with RUST International Corporation in Birmingham, Alabama until November, 1983. Prior to taking the job with RUST International Corporation, Stirling Robert Brown cancelled the life insurance policy maintained with his employer International Paper Company, and the Circuit Court at Mobile, Alabama, on April 20, 1983, found him in contempt for his "failure to maintain the life insurance policies as provided in the Judgment of Divorce." The court stated that he "may purge himself of said contempt by reinstating the life insurance policy with International Paper Company in the amount of $94,000." The contempt ruling is no evidence of fraud with respect to the present dispute, for it merely determined that Stirling Robert

3

job with RUST International Corporation in Birmingham, Alabama, and the proceeds of the life insurance policy in question arose out of a group policy issued by his new employer.

The determination of whether a life insurance policy is or is not the same as the one in effect at the time of the divorce decree is critical to finding an equitable interest. *Frawley v. U.S. Steel Min. Co.*, 496 So.2d 731 (Ala. 1986).[2] There is no question but that the life insurance policy maintained through RUST International Corporation was not a policy in effect at the

---

Brown failed to maintain a life insurance policy with International Paper Company <u>while he was still employed by that company</u>.

[2] In *Frawley*, the court was faced with a decision of whether or not a daughter had an equitable interest in the proceeds of a life insurance policy issued on the life of her father at his place of his employment. At the time of his divorce the father was employed by U.S. Steel Mining, and the divorce decree required him to make his daughter the "irrevocable beneficiary under the life insurance policy in effect at the U.S. Steel -- Concord Mines." Critical to the court's decision was the determination of whether or not the policy in effect at his death was the same as the one he had earlier maintained, or whether it was a new and distinct policy which was not in effect at the time of his divorce and, therefore, not contemplated by the divorce decree. The policy in effect at the time of the father's divorce was a United Mine Workers of America (UMWA) policy, but sometime after the divorce decree UMWA and U.S. Steel agreed in labor negotiations that U.S. Steel would assume the life insurance coverage of its employees. The court was unwilling to accept a mere technicality which would regard the changed policy as new and distinct. It noted that there was no lapse of protection and that the benefits being paid under the UMWA policy were continued even after the change. Without a "new" and distinct policy, the policy was the one in effect at the time of the divorce decree and, therefore, within the terms of the decree. In contrast, the life insurance policy maintained by Stirling Robert Brown was an entirely new policy at a different place of employment. Indeed, the *Frawley* Court, in distinguishing *Rau*, see *infra* footnote 4 and accompanying text, stated that "the father-decedent at the time of his death was at a different place of employment, under a completely new policy, issued as a benefit." *Frawley v. U.S. Steel Min. Co.*, 496 So.2d at 735.

4

time of the Judgment of Divorce and, therefore, does not fall within the language of that judgment requiring Stirling Robert Brown to keep Katharine Mary Ann Brown "as beneficiary on the life insurance **now in effect on his life** for as long as she remains unmarried." While it is true that an "insured cannot defeat the equitable right of a beneficiary by failing to act," see *Williams v. Williams*, 158 So.2d 901 (1963), there is no act which Stirling Robert Brown could have taken to maintain the life insurance policy then in effect with International Paper Company, his employer at the time of the divorce. Stirling Robert Brown did not purchase the life insurance policy with his subsequent employer, RUST International Corporation, but rather was able to maintain it as a group policy under an employee benefit plan.³

Where there is no evidence that a policy was intentionally dropped and a subsequent policy purchased in its place in order to evade the interest of the beneficiary under the first policy and the court's divorce decree, the prior beneficiary does not have an equitable interest in the proceeds of the subsequent

---

³ In a letter brief dated April 12, 1990, counsel for Katharine Mary Ann Brown argued that a major distinction between the *Rau* decision, see *infra* footnote 4 and accompanying text, and this case is that in *Rau* the benefit was <u>provided</u> by the employer but that here Stirling Robert Brown <u>purchased</u> the subsequent life insurance policy. At the court's motion docket on April 13, 1990, however, counsel orally withdrew that assertion stating that he was not sure whether the policy with Connecticut General Life Insurance Company was purchased by Stirling Robert Brown or provided by his employer as a group policy employee benefit. Affidavits of record and counsel for Patsy Sawyer Brown clarified that the life insurance policy was not purchased as such, but was provided by and through the employer RUST International Corporation as a group policy employee benefit.

5

policy. *Rau v. Rau*, 429 So.2d 593 (Ala. Civ. App. 1982).[4] There is also no evidence of unjust enrichment to Patsy Sawyer Brown. She had been the wife of Stirling Robert Brown for more than six years at the time of his death and had been the named beneficiary of the life insurance policy in question throughout his greater than five year term of employment with RUST International Corporation.

For the foregoing reasons, the motion for summary judgment in favor of Patsy Sawyer Brown is due to be granted and the motion for summary judgment by Katharine Mary Ann Brown is due to be denied. A separate order disposing of the cross claims for summary judgment will be entered.

---

[4] In *Rau v. Rau*, 429 So.2d 593 (Ala. Civ. App. 1982), the court was faced with a situation not unlike the one presently before the court. There, a divorce decree required Mr. Rau to keep in force and effect a "then existing" life insurance policy on his life which named his minor children as the beneficiaries. Some five years after his divorce, Mr. Rau changed jobs and companies and his new employer took out a $10,000 group life insurance policy on his life with his new wife as the named beneficiary. With that factual setting the court refused to find any basis in equity for attaching a constructive trust to the proceeds of the insurance policy. Katharine Mary Ann Brown argues that the decision may be distinguished on the basis that the $10,000 policy in *Rau* did not exist at the time of the divorce and that there was naturally, therefore, no evidence of an intention to fraudulently evade the equitable rights of the children under the decree. Whereas in the present dispute, she argues, Stirling Robert Brown intentionally dropped the policy with International Paper Company and took a new job with RUST International Corporation for the fraudulent purpose of evading her equitable interest and the order of the court. Apart from her unilateral conclusions and assumptions, however, there is absolutely no evidence that the change of jobs was for the fraudulent purpose of evading her interests or the court's decree. Moreover, by careful construction of the language of the agreement embodied in the Judgment of Divorce, there were available to the plaintiff numerous ways of securing an interest in subsequently maintained life insurance policies.

6

DONE this  17th  day of May 1990.

                                                       *[signature]*
                                                     UNITED STATES DISTRICT JUDGE